IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

1:06CV 0298

| ELIZABETH E. SLOAN | |
|---|---|
| Plaintiff, | |
| v. | **AMENDED COMPLAINT** |
| WACHOVIA BANK, N.A., | **BREACH OF FIDUCIARY DUTY** |
| Defendant. | |

Pursuant to the Court's Order of January 8, 2007, the Plaintiff, by and through the undersigned files this Amended Complaint. In support of her Amended Complaint against the Defendant, Plaintiff alleges and states as follows:

1. The plaintiff is a citizen and resident of the State of Texas. The defendant is incorporated under the laws of the State of North Carolina, having its principal place of business in the State of North Carolina. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

2. The Defendant's principal place of business is in the Western District of North Carolina.

3. On November 1, 1946, Sudie Elizabeth Ek of Buncombe County, North Carolina, entered into an Irrevocable Trust Agreement (hereinafter "the Trust") wherein she was Grantor and William Ek Partin was Trustee. Mr. Partin was also a resident of Buncombe County.

4. In 1987, the individual Trustee of the Trust resigned and First Union National Bank of North Carolina, through its trust officers in Asheville, North Carolina, became successor Trustee. In 1995, First Union assigned management of the Trust to an office in Jacksonville, Florida.

5. The plaintiff, in Article III of the Trust, is named as a beneficiary of the Trust. The Trust calls for periodic, discretionary distributions of net income to the plaintiff during her lifetime.

6. The plaintiff did in fact receive periodic distributions of Trust income for a number of years.

7. In late 1998, the plaintiff contacted the trust officer handling the Trust and advised that she no longer desired any further distributions of income from the Trust.

8. The Defendant, in its capacity as Trustee of the Trust, was responsible for making informed decisions regarding how to properly allocate and invest Trust assets.

9. After being advised by the Plaintiff that she no longer desired any further distributions of income from the Trust, the Defendant did undertake an analysis of what would constitute a proper and appropriate mix for the investment of Trust assets. As a result of such independent analysis the Defendant developed a strategy for the investment of Trust assets.

10. On January 27, 1999, the Defendants wrote the Plaintiff and advised her that following such independent review of Trust assets by Defendant's investment department, the Defendant would invest 80% of Trust assets into equity mutual funds and 20% of Trust assets into income producing mutual funds.

11. The Defendant elected to pursue the aforementioned 80/20% investment strategy through exclusive investment in and reliance upon Evergreen mutual funds. Evergreen mutual funds are a product affiliated with the Defendant.

12. On April 1, 2002, Wachovia Bank, N.A. merged into First Union National Bank under the new bank name, Wachovia Bank National Association, (hereinafter "Wachovia"). Wachovia assumed responsibilities as Trustee of the Trust. Wachovia has been serving as Trustee since that time.

13. The Evergreen mutual funds selected by the Trustee for investment of Trust assets repeatedly under performed comparable markets and other available mutual funds for the time period between 1999 up to and including the end of 2006.

14. Despite the fact that the Evergreen mutual funds held by the Trust consistently under performed market averages and other available mutual funds, the Defendant failed to divest the Trust of the Evergreen mutual fund holdings or to diversify Trust assets beyond Evergreen mutual funds. Moreover, the Defendant continues to invest Trust assets exclusively in Evergreen mutual funds.

15. The stock market sustained significant losses during the years 2001 and 2002. Despite these market trends, the Defendant failed to shift Trust assets away from the heavy concentration of equity mutual funds during the worst of this market decline. As a result, by 2002, the value of Trust assets had fallen to the value of Trust assets in 1997.

16. It was only after the stock market decline had bottomed out and the market had begun to rebound and after Trust holdings had taken significant losses that the Defendant elected to alter the portfolio mix from 80 % equity/ 20% income producing to

60% equity and 40% income producing. Trust assets were further damaged by these poor investment decisions by the Defendant.

17. During the period between January 1999 and into 2006, the Defendant failed to invest Trust assets in any international stocks or international equity mutual funds. The Defendant's failure to retain any international equity exposure in the Trust portfolio until 2006 was indicative of the Defendant's failure to properly diversify the portfolio and damaged the value of Trust assets.

18. In the first quarter of 2002, the Trust held assets in an Evergreen short term bond fund. In the second quarter of 2002, the Defendant sold the Trust holdings in the short term bond fund and moved into an Evergreen intermediate bond fund. In the first quarter of 2003, the Defendant reversed course, divested the Trust holdings in the Evergreen intermediate bond fund and reinvested in Evergreen's short term bond fund.

19. In the third quarter of 2003, the Defendant moved Trust assets into Evergreen's large capital fund. In the first quarter of 2004, the Defendant moved Trust assets out of the Evergreen large capital fund. Such movement of assets as described in this and the preceding paragraph over the short periods of time mentioned therein is indicative of market timing on the part of the Defendant.

20. Trust assets remained 100% invested in Evergreen mutual funds in 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006. The exclusive concentration of Trust assets in Evergreen mutual funds for this period of time created an unsuitable Trust portfolio and is indicative of a failure to diversify Trust assets on the part of the Defendant.

21. In excess of $600,000.00 in Trust assets was invested in as few as four Evergreen mutual funds in 2000 and 2001, five Evergreen mutual funds in 2004, and 2005 and six Evergreen mutual funds in 2002, 2003 and 2006. The Defendant's decision to hold substantial Trust assets in such a small number of mutual funds placed too much reliance on the performance of those funds and amounted to a failure to properly diversify the Trust portfolio.

22. Following the Plaintiff's request that no more distributions be made from the Trust and up to and including December 31, 2006, the value of Trust assets managed by the Defendant grew from $615,437.00 to $662,342.00. Defendant's handling of Trust assets during this time period generated an average annual growth of the Trust portfolio of approximately 1% per year. This dismal growth took place during a period when no distributions were made from the Trust to any beneficiary of the Trust.

23. During the time period in which the value of Trust assets grew at an average annual rate of approximately 1%, the Defendant was charging the Trust fees ranging between 1.25 and 1.5 % of Trust assets. The Defendant has in fact charged more than $60,000.00 in fees during the period between January 1, 1999 and December 31, 2006 while the value of Trust assets increased only $46,905.00 for the same 7 year

period. Again, there were no distributions to any Trust beneficiary during this 7 year period.

24. During the time period between the Plaintiff advising the Defendant that she did not want any further disbursements from the Trust and December 31, 2006, the Trust investment portfolio put together by the Defendant substantially under performed market indicators such as the Standard and Poor 500, the Dow Industrial average, the American Stock Exchange, the New York Stock Exchange, the Russell 2000 and the average return on Moody's Aa bonds.

25. The Defendant knew that the Evergreen mutual funds performed below market indexes and were regularly out performed by other mutual funds in categories identical or similar to those invested in by the Defendant between 1999 and 2006. The Defendant also knew of the affiliation between Defendant and the Evergreen mutual Fund family. In spite of the Defendant's knowledge of the poor performance of the Evergreen mutual funds in the Trust portfolio and the close connection between the Evergreen mutual Fund family and the Defendant, the Defendant continued to recommend and invest exclusively in Evergreen mutual funds.

26. By investing Trust assets exclusively in Evergreen mutual funds for such an extended period of time despite the fact that the Trust portfolio was under performing the market and other available mutual funds, the Defendant was using Trust assets for purposes other than the primary benefit of Trust beneficiaries.

27. The investment strategy pursued by the Defendant between January 1, 1999 and December 31, 2006 failed to make Trust assets productive for the benefit of the Trustees.

## COUNT ONE
## VIOLATION OF UNIFORM TRUST CODE

28. The Plaintiff reasserts and incorporates by reference the provisions of paragraphs 1 through 27 of the Complaint.

29. The Defendant's actions in this case are governed by the provisions of North Carolina's Uniform Trust Code (UTC). The UTC at N.C.G.S. §36C-9-903 imposes a specific duty on Trustees to diversify the investments of a Trust unless the Trustee reasonably determines that because of special circumstances the purposes of the Trust are better served without so diversifying.

30. The Defendant breached its duty to diversify in a number of ways. Specifically, the Defendant's decision to place 80% of Trust assets in equity mutual funds and 20% into Trust assets into income producing mutual funds continued a failure to properly diversify the Trust portfolio.

31. The Defendant's failure to adjust this mix in the face of a significantly declining stock market is another breach of the Defendant's duty to diversify.

32. The Defendant's failure to invest any Trust assets in international equity mutual funds until 2006, the Defendant's exclusive reliance upon and investment in Evergreen mutual funds between January 1, 2999 and December 31, 2006, and the Defendant's decision to invest significant amounts of assets in only 4 to 6 mutual funds, all amount to breaches of Defendant's duty to diversify.

33. Such failure to properly diversify the Trust portfolio continued from 1999 through December 31, 2006 and in fact continues to the present date.

34. Such failure to diversify Trust assets constitutes a breach of Trust by the Defendant pursuant to N.C.G.S. § 36C-10-1001.

35. The provisions of the UTC further require the Trustee to comply with the Prudent Investor Rule, N.C.G.S. §36C-9-901, et seq.

36. A higher of standard of care is imposed upon a Trustee such as the Defendant than would be imposed upon non-expert or nonprofessional Trustees.

37. The Defendant's exclusive and blind reliance on Evergreen mutual funds for the investment of Trust assets is in violation of the Prudent Investor Rule.

38. The Defendant's decision to invest Trust assets exceeding $600,000.00 in as few as 4 and no more than 6 mutual funds is a violation of the Prudent Investor Rule.

39. The Defendant's decision in January of 1999 to invest Trust assets in a mix of 80% investment in equity mutual funds and 20% investment in income producing mutual funds and the further decision to automatically adhere to such mix in the face significant and substantial declines in the stock market was a violation of the Prudent Investor Rule.

40. The Defendant's decision to pursue a mixture of stock and bond mutual funds that was not suitable for the Trust portfolio given the needs and objectives of the Trust was a violation of the Prudent Investor Rule by the Defendants.

41. The Defendant's decision to maintain its exclusive reliance on Evergreen mutual funds when such mutual funds were under performing the market and under performing other available mutual funds in the same or similar categories was a violation of the Prudent Investor Rule.

42. The aforementioned and other violations of the Prudent Investor Rule by the Defendant constitute a breach of trust by the Defendant.

43. A Trustee that commits a breach of trust is liable to the Trust for the amount required to restore the value of Trust property to what it would have been had the breach not occurred pursuant to the provisions of N.C.G.S. §36C-10-1002.

44. The value of Trust property has been diminished by an amount in excess of $200,000.00 as a result of the aforementioned breaches by the Defendant.

45. The Plaintiff is entitled to recover in excess of $200,000.00 for the Defendant's violations of the provisions of the UTC.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

46. The Plaintiff reasserts and incorporates by reference the provisions of paragraphs 1 through 45 of the Complaint.

47. The Plaintiff as a beneficiary of the Trust, placed special confidence in the Defendant during the time period described in the Complaint.

48. The Defendant, and its predecessors in interest, having accepting appointment as Trustee of the Trust, were obligated and bound to act in good faith and with due regard to the Plaintiff's interest.

49. By reason of the Plaintiff's status as a beneficiary of the Trust and Defendant status as a Trustee of the Trust, a fiduciary relationship existed between the parties throughout the time period of the events described in the Complaint and continuing up to the present time.

50. The Defendant breached it fiduciary duty owed to the Plaintiff by pursuing a portfolio mix of equity and bond investments that was not suitable for the Trust given the needs and objectives of the Trust.

51. The Defendant breached its fiduciary duty to the Plaintiff through the Defendant's exclusive reliance on and investment of Trust assets in Evergreen mutual funds which continues to the present.

52. The Defendant breached its fiduciary duty to the Plaintiff by holding a substantial amount of Trust assets in a very small number of mutual funds, which breach continues to the present.

53. The Defendant's failure to properly diversify the Trust portfolio, as more particularly described in Count One of the Complaint, constitutes a breach of its fiduciary duty to the Plaintiff.

54. The Defendant owes a duty to the Plaintiff to make Trust property productive for the benefit of beneficiaries of the Trust. By adhering to an investment

strategy that relied exclusively on Evergreen mutual funds despite the fact that such funds under performed the market and other available mutual funds, by following a strategy which resulted in a mix of stocks and bonds which was not suitable to the Trust, and by investing a large amount of Trust assets in a small number of performing mutual funds, the Defendant breached its duty to make the Trust property productive. This constitutes a breach of Defendant's fiduciary duty to the Plaintiff.

55. The Defendant has a duty and responsibility to use Trust assets for the primary benefit of Trust beneficiaries. By investing Trust assets exclusively in Evergreen mutual funds for an extended period of time up to and including the present, despite the fact that such funds were under performing the market and other available mutual funds and with the knowledge that Evergreen mutual funds were affiliated with the Defendant, the Defendant was using Trust assets for purposes other than for the primary benefit of the beneficiaries. Such conduct amounts to a breach of the Trustee's duty of loyalty and impartiality, thereby constituting a breach of the Defendant's fiduciary obligations to the Plaintiff.

56. The Plaintiff has been damaged by the Defendant's breaches of its fiduciary duty in amount in excess of $200,000.00.

## COUNT THREE
## CONSTRUCTIVE FRAUD

57. The Plaintiff reasserts and incorporates by reference the provisions of paragraphs 1 through 56 of the Complaint.

58. Given the Plaintiff's status as a beneficiary of the Trust and Defendant's status as Trustee of the Trust, the parties were in a relationship of trust and confidence during the time period described in the Complaint and continuing to the present.

59. The Defendant used its position of Trust and confidence to benefit itself to the Plaintiff's disadvantage by paying itself fees which exceeded the amount of growth in Trust assets for the time period January 1, 1999 through December 31, 2006.

60. The Defendant used its position to benefit itself by investing Trust assets exclusively in Evergreen mutual funds for more than 7 years despite the fact that such funds under performed the market and other available mutual funds By so doing, the defendant used Trust assets for purposes other than the primary benefit of Trust beneficiaries. Such conduct provided a benefit to the Defendant given its affiliation with Evergreen mutual funds, and constitutes constructive fraud on the part of the Defendant.

61. The Plaintiff has been damaged by the Defendant's constructive fraud in an amount in excess of $200,000.00.

WHEREFORE, plaintiff respectfully prays the Court as follows:

1. That the plaintiff have and recover from the defendant an amount in excess of $200,000.00;

2. That the cost of this action, including attorney's fees, be taxed against the defendant;

3. For a trial by jury as to all issues; and

4. For such other further relief as to the Court may deem just and proper.

This the 12th day of January, 2007.

VAN WINKLE, BUCK, WALL, STARNES
AND DAVIS, P.A.

By: s/ Stephen J. Grabenstein
Stephen J. Grabenstein, Esq.
NC Bar #18848
Attorneys for Plaintiff
11 North Market Street
P.O. Box 7376
Asheville, North Carolina 28802
(828)258-2991
(828)258-0255 (fax)
E-mail: sgrabenstein@vwlawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing Plaintiff's Amended Complaint was served upon all other parties to the above-entitled action by electronic filing with CM/ECF System and by depositing a copy of same in a postpaid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, properly addressed to the attorney(s) of record for all other parties as follows:

>Robert W. Fuller
>rfuller@rbh.com
>Andrew W.J.Tarr
>atarr@rbh.com
>Robinson, Bradshaw & Hinson, P.A.
>101 North Tryon Street, Suite 1900
>Charlotte, NC 28246

This the 12th day of January 2007.

>VAN WINKLE, BUCK, WALL, STARNES
>AND DAVIS, P.A.
>
>By: s/ Stephen J. Grabenstein
>Stephen J. Grabenstein, Esq.
>NC Bar #18848
>Attorneys for Plaintiff
>11 North Market Street
>P.O. Box 7376
>Asheville, North Carolina 28802
>(828)258-2991
>(828)258-0255 (fax)
>E-mail: sgrabenstein@vwlawfirm.com